**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| VICTORIA GALLEGOS, | § | |
| *Plaintiff* | § | |
| | § | |
| v. | § | Case No.  SA-25-CA-00641-XR |
| | § | |
| WAL-MART STORES TEXAS, LLC, | § | |
| *Defendant* | § | |

## ORDER COMPELLING ARBITRATION AND STAYING CASE

On this date, the Court considered Defendant Wal-Mart Stores Texas, LLC's Motion to Compel Arbitration and Stay (ECF No. 16) and the associated briefing (ECF Nos. 17–18).  After careful consideration, the Motion is **GRANTED**, and the case is **STAYED** pending arbitration.

## BACKGROUND

Plaintiff Victoria Gallegos alleges that in August 2023, she was shopping at a Wal-Mart store when a steel fixture fell on and injured her.  ECF No. 1-3 at 6.  At the time of the incident, Wal-Mart employed Gallegos at the store where she was injured.  ECF No. 16-6 at ¶ 7; ECF No. 1-3 at 6.  The Petition is silent regarding whether Gallegos was acting in the course and scope of her employment at the time of the incident, *see* ECF No1-3, but she says in her Response that she was not, ECF No. 17.  Wal-Mart did not deny that assertion in its Reply.  *See* ECF No. 18.

Gallegos sued Wal-Mart in state court, bringing claims for negligence, premises liability, and respondeat superior.  ECF No. 1-3 at 6–8.  Wal-Mart removed to this court.  ECF No. 1.[1]

---

[1] In her Response, Gallegos requests a remand to state court, arguing that Wal-Mart's Notice of Removal was untimely. ECF No. 17.  But a motion to remand "on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal."  28 U.S.C. § 1447(c).  "Otherwise, [the] plaintiff waives any objection to the . . . defect, and the action proceeds in federal court, even [if] removal was procedurally improper."  *Hinkley v. Envoy Air, Inc.*, 968 F.3d 544, 549 (5th Cir. 2020).

Wal-Mart filed its notice of removal in June 2025.  ECF No. 1.  Gallegos did not request a remand until December 2025, ECF No. 17, long after her 30-day deadline had passed.  Gallegos has thus waived her objection that the Notice of Removal was untimely.

Wal-Mart filed this Motion arguing that, as a Wal-Mart employee, Gallegos had agreed to a policy requiring arbitration of this dispute. ECF No. 16. The arbitration agreement was in an appendix to Wal-Mart's occupational injury plan. *See* ECF No. 16-4 at 49. It requires arbitration of:

> (1) any legal or equitable claim or dispute relating to enforcement or interpretation of the arbitration provision in a Receipt, Safety Pledge and Arbitration Acknowledgment form, an Associate training program, or this Policy; and

> (2) any legal or equitable claim by or with respect to an associate for any form of physical or psychological damage, harm or death which relates to an accident, occupational disease, or cumulative trauma (including, but not limited to, claims of negligence or gross negligence or discrimination; claims for intentional acts, assault, battery, negligent hiring/ training/ supervision/ retention, emotional distress, retaliatory discharge, or violation of any other noncriminal federal, state or other governmental common law, statute, regulation or ordinance in connection with a job-related injury, regardless of whether the common law doctrine was recognized or whether the statute, regulation or ordinance was enacted before or after the effective date of this Policy)[; and]

> (3) The determination of whether a claim is covered by this Policy.

ECF No. 16-5 at 55–56. Gallegos completed a computer-based learning program in which she acknowledged receipt and understanding of the arbitration agreement. *See* ECF No. 16-3 at 25; ECF No. 16-7.

Wal-Mart argues that (1) Gallegos's claims must be decided by arbitration and (2) the claims' arbitrability must be decided by arbitration.

## DISCUSSION

### I.    General Legal Standard

The Federal Arbitration Act ("FAA") provides that arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. The Act "mandates that district courts *shall* direct the parties to

proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original).

Deciding a motion to compel arbitration generally involves two steps: "First, the court asks whether there is a valid agreement to arbitrate and, second, whether the current dispute falls within the scope of a valid agreement." *Edwards v. Doordash, Inc.*, 888 F.3d 738, 743 (5th Cir. 2018). "Ordinarily both steps are questions for the court." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016).

But "parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551 (5th Cir. 2018). "[I]f the party seeking arbitration points to a purported delegation clause, the court's analysis is limited. It performs the first step—an analysis of contract formation—as it always does." *Kubala*, 830 F.3d at 202. But if it finds a valid arbitration agreement, the only remaining question for the court is "whether the purported delegation clause is in fact a delegation clause—that is, if it evinces an intent to have the arbitrator decide whether a given claim must be arbitrated." *Id.* Courts "should not assume that the parties agreed to arbitrate arbitrability unless there is clear and unmistakable evidence that they did so." *Archer & White Sales, Inc. v. Henry Schein, Inc.*, 935 F.3d 274, 277 (5th Cir. 2019). When the arbitration agreement delegates the question of arbitrability to an arbitrator, "a court possesses no power to decide" whether the parties' dispute falls within the scope of the agreement. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63, 68 (2019).

## II.    Whether a Valid Arbitration Agreement Between the Parties Exists

In deciding the first issue—whether there is a valid agreement to arbitrate—the question is "whether the parties entered into *any arbitration agreement at all*." *Kubala*, 830 F.3d at 201

3

(emphasis in original).   Whether the parties "entered a valid arbitration contract turns on state contract law." *Id.*   Wal-Mart asserts that Texas law applies here, ECF No. 16 at 6, and Gallegos does not dispute that assertion, *see* ECF No. 17.

Texas law provides that the party attempting to enforce an arbitration agreement must show that the agreement meets all requisite contract elements. *Specialty Select Care Ctr. of S.A., L.L.C. v. Owen*, 499 S.W.3d 37, 43 (Tex. App.—San Antonio 2016).   Under Texas law, "[t]he elements needed to form a valid and binding contract are (1) an offer; (2) acceptance in strict compliance with the offer's terms; (3) a meeting of the minds; (4) consent by both parties; (5) execution and delivery; and (6) consideration." *Id.*   When an arbitration agreement is part of an underlying contract, the rest of the agreement provides the necessary consideration. *In re AdvancePCS Health L.P.*, 172 S.W.3d 603, 607 (Tex. 2005).

Along with state contract defenses, this Court can determine that an arbitration agreement is invalid or unenforceable on any grounds that exist at law or in equity for the revocation or unenforceability of a contract. *See* 9 U.S.C. § 2.   Unconscionable contracts, whether relating to arbitration or not, are unenforceable under Texas law. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 892 (Tex. 2010).   "Substantive unconscionability refers to the fairness of the arbitration provision itself, whereas procedural unconscionability refers to the circumstances surrounding adoption of the arbitration provision." *In re Palm Harbor Homes, Inc.*, 195 S.W.3d 672, 677 (Tex. 2006).   "In applying the unconscionability standard, the crucial inquiry is whether the arbitral forum in a particular case is an adequate and accessible substitute to litigation, a forum where the litigant can effectively vindicate his or her rights." *Olshan*, 328 S.W.3d at 894.   When the nonmovant proves that the arbitration provision is not valid or cannot otherwise be enforced,

the motion to compel must be denied. *See Zamora v. Swift Transp. Corp.*, No. EP-07-CA-00400-KC, 2008 WL 2369769, at *4 (W.D. Tex. June 3, 2008).

Gallegos does not dispute that she agreed to Wal-Mart's occupational injury plan or to the arbitration agreement attached thereto. And she does not argue that the arbitration agreement is invalid or unenforceable. She only argues that this dispute is not arbitrable because she was not acting in the course and scope of her employment when she was injured. ECF No. 17. That is a question of the arbitration agreement's scope, not its existence or validity.

### III. Whether Plaintiffs' Claims Fall Within the Arbitration Agreement's Scope

When an agreement to arbitrate contains an applicable delegation clause, the court should compel arbitration; it lacks the power to decide whether the underlying claims fall within the arbitration agreement's scope. *Henry Schein*, 586 U.S. at 68. But, again, a court will only compel arbitration of arbitrability if there is "clear and unmistakable evidence" that the parties agreed to it. *Archer & White*, 935 F.3d at 277.

The agreement here requires arbitration of (a) "any legal or equitable claim or dispute relating to enforcement or interpretation of the arbitration provisions in" the arbitration agreement and (b) "[t]he determination of whether a claim is covered by" the arbitration agreement. ECF No. 16-4 at 49. It also provides that the "arbitrator, and not any federal, state, or local court or agency, shall have exclusive authority to resolve any dispute relating to the interpretation, applicability, enforceability or formation of this agreement." ECF No. 16-4 at 52. Those provisions are "clear and unmistakable evidence" that the parties agreed to arbitrate arbitrability. So the Motion must be granted.

The Court notes that it is not clear that referring this case to arbitration will resolve Gallegos's claims in a just, speedy, or inexpensive manner. Wal-Mart employs Gallegos. ECF

No. 16-6 ¶ 5.  The arbitration agreement is an appendix to Wal-Mart's occupational injury plan. *See* ECF No. 16-4 at 49.  The Petition alleges that Gallegos was purchasing an item at a Wal-Mart store when she was injured, but it does not allege that she was off-duty at the time of the incident. *See* ECF No. 1-3.

Wal-Mart contends that whether Gallegos must submit to arbitration is a question for the arbitrator.  Because of established law in this area, the Court reluctantly agrees.  But if Gallegos was merely visiting the store on a day she was not working or after she had clocked out, Wal-Mart's occupational injury plan does not apply to her case.  *See, e.g.*, ECF No. 16-4 at 14 (limiting "Injury" to damage or harm "directly and solely result[ing] from[] the Course and Scope of Employment").  Because the arbitration agreement is an appendix to that plan, it seems unlikely that Gallegos's claims fall within the arbitration agreement's scope.

Nonetheless, for the reasons outlined above, the Court must refer this case to arbitration for at least a determination of arbitrability.

**IV.    Whether the Case Should be Stayed Pending Arbitration**

The final issue is whether this case should be stayed pending arbitration.  "When a district court finds that a lawsuit involves an arbitrable dispute, and a party requests a stay pending arbitration, § 3 of the FAA compels the court to stay the proceeding." *Smith v. Spizzirri*, 601 U.S. 472, 478 (2024).  "[T]he court does not have discretion to dismiss the suit on the basis that all the claims are subject to arbitration." *Id.* at 475–76.  This case is thus **STAYED**.

**CONCLUSION**

For the foregoing reasons, Wal-Mart's Motion to Compel Arbitration and Stay (ECF No. 16) is **GRANTED**.  This case is hereby **STAYED** pending arbitration proceedings.

6

The Court finds this case is appropriate for administrative closure pending arbitration proceedings. *See Mire v. Full Spectrum Lending, Inc.*, 389 F.3d 163, 167 (5th Cir. 2014) ("District courts frequently make use of this device to remove from their pending cases suits which are temporarily active elsewhere (such as before an arbitration panel) or stayed (such as where a bankruptcy is pending). The effect of an administrative closure is no different from a simple stay . . . .").

The Clerk's office is therefore **DIRECTED** to **ADMINISTRATIVELY CLOSE** this case pending further order of the Court. Though administratively closed, this case will still exist on the docket of this Court and may be reopened upon request or on the Court's own motion. Parties may continue to file motions and documents in the case. The Parties shall provide the Court with an update on the status of this case on or before **April 28, 2026**, and **every ninety (90) days thereafter**.

It is so **ORDERED**.

**SIGNED** this 28th day of January, 2026.

XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

7